UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

PAUL FABOZZI and ANNETTE FABOZZI,

                             Plaintiffs,                  **MEMORANDUM & ORDER**
                                                                04-CV-4835 (MKB)

                      v.

LEXINGTON INSURANCE COMPANY, JOHN
DOES 1–10 and ABC CORPS. 1–10,

                             Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Paul and Annette Fabozzi commenced the above-captioned action against defendant Lexington Insurance Company ("Defendant"), John Does 1–10 and ABC Corps. 1–10,[1] on October 29, 2004, alleging that Defendant breached the terms of a homeowner's insurance policy covering the Fabozzi home in Staten Island by failing to pay for property damage. Plaintiffs alleged breach of contract and breach of the implied covenant of good faith and fair dealing claims. Defendant moved for summary judgment and on January 8, 2009, the Honorable Sandra Townes granted Defendant's motion for summary judgment, holding that the action was barred by the statute of limitations. On April 8, 2010, the Second Circuit vacated the decision and remanded the case to the district court. (Docket No. 39.) On November 22, 2011, Defendant again moved for summary judgment, arguing Plaintiffs failed to give "prompt" notice of the claim as required by the policy, that Plaintiffs' cause of action alleging a breach of the

---

[1] Because discovery has closed and Plaintiffs have not identified any other party, each unnamed party is dismissed from this action. *Vega-Santana v. Nat'l R.R. Passenger Corp.*, 956 F. Supp. 2d 556, 563 (S.D.N.Y. 2013); *see also Kemper Ins. Companies, Inc. v. Fed. Exp. Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) ("Fictitious parties must eventually be dismissed, if discovery yields no identities."), *aff'd*, 252 F.3d 509 (1st Cir. 2001).

duty of good faith and fair dealing should be dismissed as a matter of law, and that the policy does not cover Plaintiffs' loss. On March 26, 2012, Judge Townes granted in part and denied in part Defendant's motion for summary judgment (the "March 2012 Decision"). (Docket Entry No. 60.) Judge Townes dismissed Plaintiffs' breach of the duty of good faith and fair dealing claim but denied Defendants' motion as to the breach of contract claim.[2]

On October 26, 2012, Defendant filed a motion *in limine* to preclude the testimony of Plaintiffs' experts, and to dismiss the Complaint for Plaintiffs' inability to offer *prima facie* proof of a covered loss or damages absent such expert testimony. At a conference on February 20, 2013, the Court precluded Plaintiffs from offering expert testimony but requested briefing as to the admissibility of lay opinion testimony by Plaintiffs' witnesses as to conclusions drawn from their observations. (Minute Entry dated February 20, 2013.) At oral argument on June 5, 2013, the Court held that Plaintiffs' witnesses would be permitted to testify regarding their personal factual knowledge based on their observations but would not be permitted to offer any conclusions or opinions. (Minute Entry dated June 5, 2013.) The Court requested additional briefing on Defendant's argument that, absent expert testimony, Plaintiffs could not establish a *prima facie* breach of contract claim warranting dismissal of the Complaint. (*Id.*) For the reasons discussed below, Defendants' motion to dismiss the Complaint is denied.

**I. Background**

The Court assumes familiarity with the underlying facts, as set forth in the March 2012 Decision. Only the facts necessary for the resolution of the instant motion are included below.

---

[2] This action was reassigned to the undersigned on March 28, 2012.

### a. Damage to Plaintiffs' Property

Plaintiffs own a beachfront home (the "Property") located on the Raritan Bay of Staten Island, New York. (Pl. 56.1 ¶ 11; Def. Reply 56.1 ¶ 11.) In 2002, Plaintiffs renewed their insurance policy (the "Insurance Policy") with Defendant for a twelve month term from April 1, 2002 to April 1, 2003 for the Property. (Insurance Policy, annexed to the declaration of Brian J. Bolan dated Aug. 30, 2012 ("Bolan Decl.") as Ex. F.)

At some point between September 2001 and May 2002, Plaintiffs noticed that their home suffered from "serious structural problems." (March 2012 Decision 3.) The parties dispute the date that Plaintiffs discovered these problems. (*Id.*) Plaintiffs allege that in April 2002, they noticed damage to the Property, including cracks in the walls, and that the floors were pitched toward the rear of the house. (Pl. 56.1 ¶ 13.) In April 2002, the Property was "propped up for support to prevent it from collapsing." (*Id.*) In May 2002, portions of the foundation were exposed.

By mid-May 2002, the structural problems forced Plaintiffs to leave their home. (March 2012 Decision 4.) On May 13, 2002, Plaintiffs made a claim under the Insurance Policy, (Pl. 56.1 ¶ 15; Def. Reply 56.1 ¶ 15), which Defendant denied by letter sent to Plaintiffs on July 24, 2004, (March 2012 Decision 4). Defendant stated that the losses claimed by Plaintiffs were caused by "wear and tear, deterioration, inherent vice, latent defect, wet and/or dry rot, as well as earth movement, and the settlement, shrinking, bulging or expansion of [the P]roperty, leading to cracking of structural components thereof." (Docket Entry No. 47 Ex. H.)

### b. The Insurance Policy

According to Plaintiffs, Defendant used a form policy from Insurance Services Office, Inc. ("ISO"), an industry organization. (Plaintiffs' Memorandum in Opposition to Defendant's

3

Motion to Dismiss ("Pl. Opp'n Mem.") 2, Docket Entry No. 94.) The form policy used is the "HO-3 Special Form Policy," available on the ISO policy forms database. (*Id.*) The National Association of Insurance Commissioners ("NAIC"), a trade organization, identified the HO-3 form as the most commonly used insurance form, at the time Plaintiffs purchased the Insurance Policy. (*Id.*) The New York State Department of Financial Services and the NAIC have characterized the HO-3 form as covering "all-risks of physical loss except those that are specifically excluded." (*Id.*) According to Defendant, the relevant provision of the Insurance Policy concerning collapse is properly understood as "named peril coverage." (Defendant's Reply Memorandum in Further Support of its Motion to Dismiss ("Def. Reply Mem.") 2, Docket Entry No. 96.)

The Insurance Policy is comprised of several schedules and endorsements. Under "Coverage A — Dwelling," Plaintiffs' residence was insured in the amount of $1,511,200 for all direct physical loss. (Insurance Policy 2, Declarations Page.) However, Coverage A specifies that it did not cover loss "involving collapse, other than that provided in Additional Coverage 8," loss caused by "wear and tear, marring, deterioration," "settling, shrinking, bulging or expansion," or loss "[e]xcluded under Section I — Exclusions." (*Id.* at 6–7.) "Additional Coverage 8" states in pertinent part:

> We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
>
> a. Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
> b. Hidden decay;
> c. Hidden insect or vermin damage;
> d. Weight of contents, equipment, animals or people;
> e. Weight of rain which collects on a roof; or

4

> f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation . . . .
>
> Collapse does not include settling, crackling, shrinking, bulging or expansion.
>
> This coverage does not increase the limit of liability applying to the damage covered property.

(*Id.* at 5.) The Insurance Policy also includes several exclusions ("Section I — Exclusions"), excluding loss resulting from, *inter alia*, earth movement, water damage, power failure, neglect and war. (*Id.* 8–9.)

## II. Discussion

### a. Standard of Review

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999) ("In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." (citation and internal quotation marks omitted)). If the terms are unambiguous, courts should enforce the contract as written. *See Parks Real Estate*, 472 F.3d at 42; *Goldberger*, 165 F.3d at 182 (quoting *Village of Sylvan Beach v. Travelers Indemnity Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). However, if the contract is ambiguous, "particularly the language of an exclusion provision," the ambiguity is interpreted in favor of the insured. *See Goldberger*, 165 F.3d at 182 (quoting *Travelers Indemnity Co.*, 55 F.3d at 115). "[I]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer."

5

*Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (App. Div. 2004) (citation and internal quotation marks omitted). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted).

### b. "All Risk" versus "Named Perils"

The parties dispute the type of policy at issue, and, thus, the corresponding evidentiary burdens.[3] Defendant argues that Plaintiffs have asserted coverage under "Additional Coverage 8," which provides for "named peril coverage" only, such that Plaintiffs have the burden of proving that the Property sustained a collapse and that the collapse resulted from a specific peril. (Def. Reply Mem. 1, 6.) Plaintiffs argue that the Insurance Policy is an "all risk policy," and, consequently, Defendant has the burden to show that the loss at issue is excluded under the Insurance Policy. (Plaintiffs Sur-Reply Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl. Sur-Reply Mem.") 1–5.) The Court finds that the parties' efforts at categorizing

---

[3] The Second Circuit has addressed the differences between "all risk" and "named peril" insurance policies. "Under an all-risk policy, losses caused by *any* fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (citation and internal quotation marks omitted). Under an "all-risk" policy, the burden is on the *insurer* to show by a preponderance of the evidence that an exception to coverage applies. *Miller Marine Servs., Inc. v. Travelers Prop. Cas. Ins. Co.*, No. 04-CV-5679, 2005 WL 2334385, at *4 (E.D.N.Y. Sept. 23, 2005), *aff'd*, 197 F. App'x 62 (2d Cir. 2006). "By contrast a 'named perils' policy covers only losses suffered from an enumerated peril." *Parks Real Estate*, 472 F.3d at 41 (citation and internal quotation marks omitted). Under a "named perils" policy, the burden is on the *insured* to show by a preponderance of the evidence that loss was caused by a covered peril. *Miller Marine*, 2005 WL 2334385, at *4.

the Insurance Policy as a whole to be misplaced as the Insurance Policy provides for both "all risk" and "named peril" coverage.[4]

Coverage A insures against risk of direct loss to the Property excluding, *inter alia*, loss resulting from "collapse," "wear and tear" and "bulging or expansion." (Insurance Policy 6–7.) Coverage A is a quintessential "all-risk" policy.[5] *See City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47 (2d Cir. 2003) ("All-risk policies . . . cover all risks except those that are specifically excluded."). If Plaintiffs were asserting a claim under Coverage A, it would be Defendant's burden to show that the claim was based on an exclusionary provision, such as wear

---

[4] Contrary to Plaintiffs' position, it is not "unsupportable" that a single insurance contract may include both "all-risk" and "named perils" coverage. *See Costabile v. Metro. Prop. & Cas. Ins. Co.*, 193 F. Supp. 2d 465, 474 (D. Conn. 2002) (applying Connecticut law and finding "that the policy provides both all-risk and named perils type coverage, depending on the property coverage at issue."); *see also Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1115 (N.M. 2006) ("In this case, separate sections of the policy do not conflict with one another because the all-risk dwelling coverage and the named-perils coverage are separate and distinct coverages, each providing separate coverage for different risks to different property under different terms."). However, *Costabile* and *Battishill* are factually distinguishable as, in both cases, there was no ambiguity that the "all risk" coverage applied to a dwelling and the "named perils" coverage applied to personal property.

The Court is aware of one other case within this Circuit that has recognized a "hybrid" policy. In *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, the court recognized, in the "marine insurance policy" context, that "[a] policy may provide both all-risks and named-perils coverage, depending on the type of shipment at issue." *Mitsui Sumitomo*, 413 F. Supp. 2d 295, 300 (S.D.N.Y. 2006). The plaintiff, an importer of consumer goods manufactured in Asia, purchased an insurance policy from the defendant, covering shipments of goods leaving Asia. *Id.* at 297. The standard terms of the insurance policy only covered goods while in transit. *Id.* at 302. The insurance policy also included a "shore clause" which limited loss coverage of goods "while on docks, wharves or elsewhere on shore" to certain named perils. *Id.* Thus, the insurance policy at issue in *N. Am. Foreign Trading Corp.* provided for "all risk" coverage while the goods were in transit but only "named peril" coverage while the goods were on shore.

[5] Defendants have already admitted that the Insurance Policy provides "all risk" coverage. (Pl. Opp'n 56.1 21; Def. Reply 56.1 21; *see also* Def. Reply Mem. 3. ("There is not mystery about the fact that, in general, the policy of insurance issued to the Fabozzis affords 'all-risk' coverage, subject to specific enumerated exclusions.").)

7

and tear, settlement or collapse. *See Channel Fabrics, Inc. v. Hartford Fire Ins. Co.*, No. 11-CV-3483, 2012 WL 3283484, at *10 (S.D.N.Y. Aug. 13, 2012) ("In order to establish that a claim is subject to an exclusion, 'the insurer must show that the loss was proximately caused by the excluded peril.'" (quoting *Great Neck Ins. Co. v. Dayco Corp.*, 637 F. Supp. 765, 777 (S.D.N.Y. 1986))). Once this burden has been satisfied, Plaintiff's only hope of coverage would be under a coverage-restoring exception to Coverage A's exclusions, such as the Insurance Policy's "ensuing loss" or "Additional Coverages 8" provisions.

"Additional Coverages 8" covers direct physical loss caused by collapse only if the collapse was caused "by one or more" of several enumerated perils, including hidden decay. (Insurance Policy 5.) By its clear and unambiguous terms, "Additional Coverages 8" provides "named perils" coverage. *See TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 513 (2008) ("'Named-perils' covers only specifically enumerated risks.") Under "Additional Coverages 8," it is Plaintiffs' burden to show not only a covered loss — collapse — but also that the covered loss was caused by a covered peril — such as hidden decay. *See Rapid Park Indus. v. Great N. Ins. Co.*, No. 09-CV-8292, 2010 WL 4456856, at *2 (S.D.N.Y. Oct. 15, 2010) ("Under a 'named perils' policy, it is the insured's burden to show that its loss was caused by a covered peril."), *aff'd*, 502 F. App'x 40 (2d Cir. 2012). Here, it is undisputed that Plaintiffs claim that the Property "collapsed,"[6] thus their sole means of coverage is "Additional Coverages 8." (*See* Compl. ¶ 17 ("plaintiffs were making a claim for the damage sustained by the residence due to collapse").) Stated otherwise, by Plaintiffs' own assertion, the Property suffered a loss not protected under Coverage A. It follows that Plaintiffs therefore "bear[] the initial burden of

---

[6] As noted earlier, Defendants dispute that the Property collapsed. (Docket Entry No. 47 Ex. H.)

8

showing that the insurance contract covers the loss, i.e., that the loss resulted from a covered peril." *Potoff v. Chubb Indem. Ins. Co.*, 874 N.Y.S.2d 124, 125 (App. Div. 2009) (citation and internal quotation marks omitted).[7]

In *Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co.*, evaluating similar policy language, the court, in granting summary judgment to the defendant-insurer, stated that the plaintiff-insured "offered no evidence the alleged collapse was caused by '[d]ecay that is hidden from view' or any other causes of loss as provided under the Additional Coverage for Collapse section." *Residential Mgmt.*, 884 F. Supp. 2d 3, 10 (E.D.N.Y. 2012). Although, as Plaintiffs note, the court in *Residential Mgmt.* did not state whether it was the plaintiff-insured's initial or ultimate burden, the court did hold that the plaintiff-insured failed "to meet the requirements under the

---

[7] The burden-shifting within the Insurance Policy at issue here is not unlike how New York courts have evaluated "comprehensive general liability insurance" policies. The New York Court of Appeals has made clear that "[o]nce an insurer has satisfied its burden of . . . satisfying the basic requirement for application of . . . [a] coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within . . . [an] exception to exclusion." *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634 (1997); *see also State v. U.W. Marx Inc.*, 618 N.Y.S.2d 135, 137 (App. Div. 1994) ("It is well settled that where, as here, the existence of coverage depends entirely on the applicability of an exception to an exclusion, the insured has the duty of demonstrating that the exception governs."). In justifying this approach, the New York Court of Appeals stated, *inter alia*, that "[s]hifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist." *Northville Indus. Corp.*, 89 N.Y.2d at 634. Although the comprehensive general liability insurance at issue in *Northville* provided "named perils" coverage only, the reasoning is applicable to the facts before the Court. By the Insurance Policy's clear and unambiguous language, the "Additional Coverage 8" provision restored coverage to Plaintiff's Property where it would not otherwise exist. In reviewing similar policy language, the court in *Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co.*, came to the same conclusion. *See Residential Mgmt.*, 884 F. Supp. 2d 3, 7 (E.D.N.Y. 2012) ("The Additional Coverage for Collapse section *adds back coverage* for collapse, but only to the extent the Policy defines 'collapse' and only when due to one of the causes specified . . . ." (emphasis added)).

9

Additional Coverage" provision of the insurance policy. *Id.* [8] The Court is aware of at least one court in this Circuit that has placed the burden on the plaintiff-insured to show that the insurance policy covered the claimed loss, notwithstanding the existence of an "all risk" policy. *See*

---

[8] In support of their respective arguments, the parties cite to *Seward Park Housing Corp. v. Greater New York Mutual Insurance Co.*, 836 N.Y.S.2d 99 (App. Div. 2007). *Seward* involved a residential cooperative apartment complex, which included four high-rise apartment buildings, dozens of commercial stores and a two-level garage. *Id.* at 101. One evening, the northern portion of the garage collapsed. *Id.* The plaintiff then made a claim against the defendant-insurer, under its "all-risk, first-party property policy." *Id.* The defendant denied coverage, partially on the basis of "collapse." *Id.* A jury trial followed and Plaintiff was awarded over $12 million dollars. *Id.* Although unclear, it appears that the jury found that an "exception to the collapse exclusion," applied where the collapse was caused in part by weight of rain. *Id.* at 102. On appeal, Defendants argued that the exception to the collapse exclusion required that the weight of rain be the dominant cause of the collapse, rather than simply a cause, and that the loss sustained was excludable because it resulted from a hidden or latent defect. *Id.* The First Department, Appellate Division, found that there was no such requirement that the weight of rain be the dominant cause of the collapse, and stated that the trial court "correctly determined the issue of causation." *Id.* With respect to the defendant-insurer's hidden or latent defect argument, the court found that the defendant-insurer "failed to satisfy its burden of establishing that the claimed policy exclusion defeats the insured's claim to coverage." *Id.* The parties dispute the significance of this case. Defendant argues that this case supports its position because the plaintiff-insured established a *prima facie* case by presenting proof of actual collapse and proof that the collapse had been caused by the weight of rain before the burden shifted to the defendant-insurer. (Def. Reply Mem. 7.) However, there is no language in the First Department's decision to suggest that the plaintiff-insured's *prima facie* case required proof of the cause of the collapse. On remand, the trial court noted that it had instructed the jury "that if the weight of rain was a partial cause of collapse of the garage, then the plaintiff was entitled to the full replacement cost in accordance with the contract of, insurance." *Seward Park Housing Corp. v. Greater New York Mut. Ins. Co.*, slip op. at 1, 2008 N.Y. Misc. LEXIS 8095 (Sup. Ct. 2008). If anything, this language suggests that it was the plaintiff-insured's ultimate burden to prove that the weight of rain was, at least, a partial cause of the collapse. However, given the lack of explicitness concerning the burdens at play, this case is of minimal value.

Plaintiffs argue that the burden to show causation was the defendant-insurer's because the First Department stated that the applicability of the latent defect exclusion would not have been established even if there were no coverage for collapse caused by the weight of rain as the defendant-insurer "utterly failed to support its claims." (Pl. Sur-Reply Mem. 4. (quoting *Seward Park*, 836 N.Y.S. at 102–03).) However, the First Department language cited to by Plaintiff only stands for the unremarkable proposition that under an all-risk policy, a defendant-insurer must show that the excluded peril proximately caused the loss at issue. *See Channel Fabrics*, 2012 WL 3283484, at *10. Without more information concerning the *prima facie* burdens applied, this case is of little help in assessing whether the initial burden of causation is Plaintiffs' or Defendant's in the instant action.

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 226 F. Supp. 2d 470, 479 (S.D.N.Y. 2002) (rejecting the plaintiff-insured's motion for summary judgment and stating that "[u]nder New York law, Plaintiff would be entitled to coverage under an exception for ensuing loss only if and to the extent that *it* could prove that 'collateral or subsequent' damage occurred to other insured property as a result of the collapse" (emphasis added)); *see also Wider v. Heritage Maint., Inc.*, 827 N.Y.S.2d 837, 849 (Sup. Ct. 2007) (finding that once the defendant had shown that the "faulty workmanship exclusion" provision of an "all risk" policy applied to the plaintiff's insurance claim, it was then plaintiff's burden to submit admissible evidence raising material issues of fact requiring trial, such as the possible application of the "ensuing loss" exception to the "faulty workmanship exclusion").[9] Moreover, at least two jurisdictions evaluating similar

---

[9] Two other district court cases in this Circuit suggest, although indirectly, that burden shifting is appropriate here. In *Five Star Hotels, LLC v. Insurance Co. of Greater New York*, the court noted that the "ensuing loss" exception to the "faulty maintenance or faulty design" exclusion, operated to "restore coverage" to the insurer. *Five Star Hotels*, No. 09-CV-8717, 2011 WL 1216022, at *10 (S.D.N.Y. Mar. 24, 2011). The court did not discuss which party's burden it was to show that the ensuing loss exception applied. However, the court approvingly cited to *Smith v. Westfield Ins. Co.*, No. 06-CV-3077, 2007 WL 1740816 (E.D. Pa. June 15, 2007). In *Smith*, the court assessed the burdens involved in an "all risk" policy which contained both exclusions and exceptions to those exclusions. *Id.* at *2. In finding that the "windstorm or hail" exception to the "mold or wet rot" exclusion did not apply, the court stated that the plaintiffs-insured did not present any evidence that wind or hail damaged their home. *Id.* The court understood that it was the plaintiffs-insured's burden to show the applicability of an exception to an exclusion within an "all risk" policy. In *Rapid Park Indus. v. Great N. Ins. Co.*, the plaintiff-insured argued that the ensuing loss exception to certain identified policy exclusions covered its loss. *Rapid Park Indus.*, No. 09-CV-8292, 2010 WL 4456856, at *4 (S.D.N.Y. Oct. 15, 2010), *aff'd*, 502 F. App'x 40 (2d Cir. 2012). In finding that the exception to the exclusion did not apply, the court stated that "plaintiffs fail to identify an exception to otherwise applicable exclusions to coverage under the Policy." *Id.* This language suggests to the Court that, after the defendant-insurer met its burden of showing that the plaintiff-insured's loss resulted from a policy exclusion, the burden shifted to the plaintiff-insured to show an applicable exception to the exclusion. *See also Allianz Ins. Co. v. RJR Nabisco Holdings Corp.*, 96 F. Supp. 2d 253, 255 (S.D.N.Y. 2000) (recognizing "the doctrine that places on the insured the burden of demonstrating that an exception to an exclusion applies," but not finding it necessary to decide which party had the burden in that instance); *but see Klockner Stadler Hurter Ltd. v. Ins. Co. of*

11

insurance policy language have found that it is Plaintiff's *initial* burden to show the cause of collapse as part of a plaintiff-insured's ordinary burden of showing that the real property at issue is covered under the insurance policy. *See Tripodi v. Universal N. Am. Ins. Co.*, No. 12-CV-1828, 2013 WL 6903944, at *4 n.6 (D.N.J. Dec. 31, 2013) ("Plaintiffs, as the insureds, bear the burden of proving that the damage sustained to their basement is covered under the Policy as a 'collapse.'" (citing *Wurst v. State Farm Fire and Cas. Co.*, 431 F. Supp. 2d 501, 504 (D.N.J. 2006))); *Mount Zion Baptist Church of Marietta v. GuideOne Elite Ins. Co.*, 808 F. Supp. 2d 1322, 1324–35 (N.D. Ga. 2011) ("Plaintiff has the burden to prove that the damage to its sanctuary is covered by the Additional Coverage for Collapse provision of its insurance policy with GuideOne."); *Wurst*, 431 F. Supp. 2d at 504 ("State Farm asserts that Wurst's claim is not covered by the 'hidden decay' clause of the policy and in any event, his claim is expressly excluded by the policy. We will address each argument separately, as Wurst bears the burden of persuasion at trial with respect to the first issue but not the second."). If the Court were to accept Plaintiffs' interpretation of the burdens, the Court would be required to place the burden on Defendant to prove that a covered peril (such as hidden decay) was *not* the cause of a loss resulting from the alleged collapse, an otherwise coverage-excluding peril, of Plaintiffs' home. The Court is not aware of any case, nor have Plaintiffs identified any such case, that has done so. The Court finds that Plaintiffs bear the burden of persuasion at trial to prove that a collapse occurred and that the collapse was caused by a covered peril.

---

*State of Penn.*, 780 F. Supp. 148, 159 (S.D.N.Y. 1991) (suggesting that it is only the plaintiff-insured's burden to "offer evidence that creates a genuine issue of fact" in response to the defendant-insurer's showing of an applicable policy exclusion).

### c. Necessity of expert testimony

#### i. Collapse

Defendant argues that Plaintiffs cannot establish collapse or collapse by a particular cause without expert testimony. (Def. Reply Mem. 10.) Plaintiffs contend that expert testimony is not required. (Pl. Opp'n Mem. 6.)

Defendant argues that under New York Law, expert testimony is required where the information to be presented is beyond the ken of lay witnesses. (Def. Reply. Mem. 12.) However, Defendant draws this principle from caselaw involving medical testimony. *See Amorgianos v. National R. R. Passenger Corp.*, 137 F. Supp. 2d 147, 160 (Under New York law, when the determination of whether an *illness* or *injury* was caused by some event or conduct is 'presumed not to be within common knowledge and experience,' a plaintiff must produce expert opinion evidence 'based on suitable hypotheses' in order to support a finding of causation." (quoting *Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389, 396 (1941)); *Meiselman*, 34 N.E.2d at 370 ("Ordinarily, expert *medical* opinion evidence, based on suitable hypotheses, is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience and when legal inference predominates over statement of fact, to furnish the basis for a determination by a jury of unskillful practice and medical treatment by physicians." (emphasis added)).

Defendants cite to only two New York state cases involving real property. In *Holy Name of Jesus Roman Catholic Church v. New York City Transit Authority*, the plaintiff sued the defendant claiming that vibrations from the defendant's subway lines caused damage to the sidewalk abutting the plaintiff's real property. *Holy Name of Jesus Roman Catholic Church*, N.Y.S.2d 197, 198 (App. Div. 2006). The defendant produced expert testimony showing that the subway vibrations could not have caused the damage while the plaintiff only presented

13

deposition testimony from a reverend and the affirmation of its counsel. *Id.* The Second Department, Appellate Division found the plaintiff's evidence "merely offered speculation" and granted the defendant's motion for summary judgment. *Id.* While this case may stand for the proposition that mere speculation cannot defend against competent expert testimony, it does not support Defendant's argument that collapse or the cause of the collapse of real property can only be proven by expert testimony. In *Spoiled Trucks and Cars Corp. v. C&N Realty Development LLC*, the court had before it a spoliation motion by the defendant seeking dismissal of the plaintiff's claim alleging property damage to his premises due to plaintiff's demolition of the property in question. *Spoiled Trucks*, No. 22404/06, 2011 WL 6738859 (Sup. Ct. Sept. 28, 2011). The court found that the defendant had established a *prima facie* case that spoliation sanctions were appropriate as the subject building was "critical physical proof." *Id.* at *3. The court held that the plaintiff failed to "proffer other suitable evidence" establishing the "cause of the damage" and further noted that "[e]vidence that defendant's construction work caused property damage or injury must be supported by more than observations of a lay witness and where there is no expert evidence submitted in support, plaintiff's assertion that the building was unsafe amount[s] to no more than mere speculation." *Id.* at *4 (citing *Holy Name of Jesus Roman Catholic Church*, 813 N.Y.S.2d at 197). Defendants also cite to foreign authority directly supporting their position. *See Guyther v. Nationwide Mut. Fire Ins. Co.*, 428 S.E.2d 238, 243 (N.C. Ct. App. 1993) ("Because a lay person does not possess the technical knowledge and skill required to form an opinion concerning the cause of the collapse of a building, lay opinion testimony on the subject is not admissible.")

Although expert testimony may normally be preferred in cases involving the cause of property damage, absent any binding authority stating otherwise, the Court is unwilling to

conclude that such testimony is required as a matter of law. It is not difficult to imagine that in some instances the cause of a building's collapse may be so apparent that no special knowledge is required, allowing a jury to decide the specific cause based on testimony from lay observations. Plaintiffs argue that such is the case here. (Pl. Opp'n Mem. ("This is a case where the collapse was observable and documentable by an everyday, average person.")); *see Meiselman*, 34 N.E.2d at 370 ("but where the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary"); *see also Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 558 (N.D. Tex. 2005) (finding that expert testimony on the issue of causation to the plaintiff's property was required in the instant case but noting that it was "not holding that expert testimony is always required to show the cause of mold; some circumstances may be clear enough to fall within the common experience of jurors"). Here, the details of the testimony to be offered by Plaintiffs are not before the Court on this motion and the Court therefore cannot conclude that Plaintiffs are incorrect.

### ii. Damages

Defendant argues that Plaintiffs cannot establish damages without expert testimony. (Def. Mem. 8–9.) Plaintiffs concede that expert testimony may be required for property damage resulting in "partial loss," but argue that where a "total loss" is alleged, an insurer must pay the full amount owed as a result of the loss. (Pl. Opp'n Mem. 10–11.) Plaintiffs believe they have suffered a total loss and that they can prove the value of their loss without expert testimony. (*Id.* at 11.) Plaintiffs concede that, after presenting their case, if Defendant believes that Plaintiffs have not met their burden, Defendant will be free to move for a directed verdict. (*Id.*)

The Court finds no binding authority, nor does Defendant cite to any, supporting its position. The cases Defendant does cite are unhelpful. *See Wantanabe Realty Corp. v. City of New York*, No. 01-CV-10137, 2004 WL 27720, at *4 (S.D.N.Y. Jan. 5, 2004) (finding the proposed testimony of an "expert" to be inadmissible but making no claim that expert testimony is required to show damages); *Gass v. Agate Ice Cream*, 264 N.Y. 141, 143 (1934) (stating that "damages sustained by an automobile in a collision may be established by showing the reasonable cost of the repairs necessary to restore it to its former condition" but not stating whether expert testimony is required to do so); *Farrell v. Klapach*, 262 N.Y.S.2d 203 (App. Div. 1965) (overturning a jury verdict as to nominal damages but not stating whether expert testimony was required to prove said damages).

Defendant does identify two cases from district courts in Wisconsin, which are more on point. *See Wickman v. State Farm Fire & Cas. Co.*, 616 F. Supp. 2d 909, 920 (E.D. Wis. 2009) (holding that an assessment of the feasibility and cost of repairing real property "require[s] technical or other specialized knowledge beyond that of the ordinary layperson"); *Talmage v. Harris*, No. 03-CV-0658, 2005 WL 696976, at *2 (W.D. Wis. Mar. 25, 2005) (noting, in a fire loss damage case, that the "claimant must show that rebuilding or replacing a specific part or fixture of the building was necessitated by the fire and that the new structure does not represent a larger or improved structure or, if it does, what portion of the cost of the new structure is fairly attributable to the loss," and finding it "unlikely that a plaintiff could make such a showing without an expert witness"). However, here, Plaintiffs are attempting to recover for the total loss of the Property, rather than a partial loss, undercutting the need for expert testimony. *See Kates Grp. v. New York Prop. Ins. Underwriting Ass'n*, 839, 513 N.Y.S.2d 757 (App. Div. 1987) (finding that the plaintiff had presented a *prima facie* case for total loss based on lay witness

16

testimony and a New York Fire Department report of the fire). Defendant argues that Plaintiffs cannot merely allege a total loss without supporting evidence. (Def. Reply. Mem. 17.) The sufficiency of Plaintiffs' evidence is not currently before the Court.[10] Absent any binding authority mandating otherwise, the Court is not willing to hold that, as a matter of law, *prima facie* damages requires expert testimony.

### III. Conclusion

For the foregoing reasons, the Court denies Defendants' motion *in limine* seeking dismissal of the Complaint.

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: May 30, 2014
       Brooklyn, New York

---

[10] Plaintiffs argue that without a statement of material facts setting forth those matters for which no genuine issues exists to be tried, no basis exists to rule on the sufficiency of the evidence Plaintiffs plan to present at trial. (Pl. Opp'n Mem. 11.)

17